**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GENARO GALINDO, ) | |
| ) | |
| Plaintiff, ) | Case No.: 20-cv- 03409 |
| ) | |
| v. ) | |
| ) | First Amended Complaint for violation of |
| CITY OF CHICAGO POLICE ) | Civil Rights |
| SERGEANT W. CHUDZIK, STAR NO. ) | |
| 2273, OFFICERS S. BRANDON, STAR ) | **JURY DEMANDED** |
| NO. 18866, R. GALLAS, STAR NO. ) | |
| 17815, E. ZABLOCKI, STAR NO. 7505, ) | |
| E. ALMANZA STAR NO. 15464, D. ) | |
| MAGANA, STAR NO. 7098, V. ) | |
| MITCHELL, STAR NO. 15580, J. ) | |
| DOLAN, STAR NO. 7722, UNKNOWN ) | |
| AND UNNAMED CITY OF CHICAGO ) | |
| POLICE OFFICERS, and THE CITY OF ) | |
| CHICAGO, ) | |
| ) | |
| Defendants. | |

**FIRST AMENDED COMPLAINT**

**JURISDICTION AND VENUE**

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343 and 1331.

2. Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

**PARTIES**

3. At all times herein mentioned, Plaintiff GENARO GALINDO (hereinafter "Plaintiff"), was and is a citizen of the United States and was within the jurisdiction of this court.

1

4. At all times herein mentioned, SERGEANT W. CHUDZIK, was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. Defendant Chudzik has at least ten (10) misconduct complaints against him. Defendant is being sued in his individual capacity.

5. At all times herein mentioned, OFFICER S. BRANDON, was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. Defendant BRANDON has at least forty (40) misconduct complaints against him. Defendant is being sued in his individual capacity.

6. At all times herein mentioned, OFFICER R. GALLAS, was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. Defendant Gallas has at least twenty-four (24) misconduct complaints against him. Defendant is being sued in his individual capacity.

7. At all times herein mentioned, OFFICER E. ZABLOCKI, was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. Defendant ZABLOCKI has at least twenty-eight (28) misconduct complaints against him. Defendant is being sued in his individual capacity.

8. At all times herein mentioned, OFFICER E. ALMANZA, was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. Defendant ALMANZA has at least two (2) misconduct complaints against him. Defendant is being sued in his individual capacity.

9. At all times herein mentioned, OFFICER D. MAGANA, was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent,

or representative of the City of Chicago Police Department. Defendant MAGANA has at least six (6) misconduct complaints against him. Defendant is being sued in his individual capacity.

10. At all times herein mentioned, OFFICER V. MITCHELL, was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. Defendant MITCHELL has at least sixty-four (64) misconduct complaints against him. Defendant is being sued in his individual capacity.

11. At all times herein mentioned, OFFICER J. DOLAN, was employed by the City of Chicago Police Department and was acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. Defendant DOLAN has at least twenty-nine (29) misconduct complaints against him. Defendant is being sued in his individual capacity.

12. Unknown and unnamed officers, collectively with above-named Defendants (hereinafter "Defendants"), were employed by the City of Chicago Police Department and were acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. These Defendants are being sued in their individual capacities.

13. At all times herein mentioned, the CITY OF CHICAGO was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the CITY OF CHICAGO maintained, managed, and/or operated the CITY OF CHICAGO Police Department.

## FACTUAL ALLEGATIONS

14. On December 30, 2018, Defendant Officers Brandon, Gallas, Zablocki, Almanza, Magana, Vernon, and Dolan (collectively referred to as "Defendant Officers") were part of a team in the gang investigations division of the Chicago Police Department under the supervision of Defendant Sgt. Chudzik.

15. On December 30, 2018, Plaintiff was lawfully operating a motor vehicle in the City of Lansing, County of Cook, Illinois.

16. At that date and place, Defendants Mitchell and Dolan caused Plaintiff to stop his vehicle. There was no legal cause or reasonable suspicion to cause Plaintiff to stop his vehicle and be detained.

17. Defendants Mitchell and Dolan ordered Plaintiff out of his vehicle. There was no legal cause or reasonable suspicion to order Plaintiff out of his vehicle.

18. Plaintiff complied with Defendants Mitchell and Dolan and was immediately seized by Defendants and subjected to a custodial arrest.

19. Defendants Mitchell and Dolan had no legal cause or reasonable suspicion to seize and/or subject Plaintiff to a custodial arrest.

20. On that date Plaintiff had not engaged in any criminal activity.

21. Defendants Mitchell and Dolan did not witness Plaintiff commit any criminal act.

22. Defendants Mitchell and Dolan detained Plaintiff and brought him back to his lawful residence, 2559 Indiana Avenue, City of Lansing, County of Cook, Illinois.

23. On December 30, 2018, there was six individuals residing at 2559 Indiana Avenue, City of Lansing, County of Cook, Illinois.

24. At that date, time and place, Defendant Officers entered Plaintiff's residence and conducted a search of the home.

25. Plaintiff is informed and believes that Defendant Officers falsified information to fraudulently obtain a search warrant authorizing a search of Plaintiff's home.

26. There was no legal or probable cause for the Defendant Officers to enter the residence or conduct a search of the residence other than the search warrant

27. Defendant Officers did not have consent to enter the residence.

28. Upon executing the search, Defendant Officers falsely claimed to have recovered a firearm. Defendants further falsely claimed that the firearm was in Plaintiff's possession.

29. Plaintiff did not possess a firearm at his residence on December 30, 2018.

30. Defendants Chudzik and Brandon claimed that upon being shown the firearm, Plaintiff acknowledged ownership.

31. Plaintiff at no point on December 30, 2018 told Defendants that the firearm belonged to him. In fact, Plaintiff told Defendants that the firearm was not his and he had never seen it before.

32. Defendant Officers did not record their conduct during the execution of the search warrant with body worn cameras.

33. As a result of Defendant Officers causing Plaintiff to be charged with a criminal offense, he was subjected to a legal process, criminal prosecution, pretrial detention and a deprivation of his liberty.

34. Defendant Officers knew that the criminal prosecution, pretrial detention and deprivation of Plaintiff's liberty was based solely upon Defendants' false allegations that they found a firearm at Plaintiff's residence and that Plaintiff possessed the firearm, and thus Defendants knew Plaintiff's prosecution, pretrial detention, and deprivation of Plaintiff's liberty was not supported by probable cause.

35. On or about February 6, 2019, Plaintiff was indicted for a Class X felony, armed habitual criminal.

36. Plaintiff remained incarcerated for approximately 200 days.

37. All criminal charges against Plaintiff were dismissed on July 2, 2019 in Plaintiff's favor in a manner indicative of innocence.

38. Plaintiff was deprived of his liberty for a substantial length of time, roughly six months, as a result of the acts of the Defendants.

5

39. By reason of the above-described acts and omissions of Defendant Officers, Plaintiff sustained injuries, including but not limited to, loss special damages, humiliation and indignities, and suffered great mental and emotional pain and suffering all to his damage in an amount to be ascertained.

40. The aforementioned acts of Defendant Officers were willful, wanton, malicious, oppressive and done with reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

41. By reason of the above-described acts and omissions of Defendant Officers, Plaintiff was required to retain an attorney to institute, prosecute and render legal assistance to him in the within action so that he might vindicate the loss and impairment of his rights. By reason thereof, Plaintiff requests payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

## COUNT I
**PLAINTIFF AGAINST ALL INDIVIDUAL KNOWN AND UNKNOWN DEFENDANTS AND OTHERS, FOR UNREASONABLE SEIZURE**

42. Plaintiff hereby incorporates and realleges paragraphs one (1) through forty-one (41) hereat as though fully set forth at this place.

43. By reason of Defendants' conduct, Plaintiff was deprived of rights, privileges and immunities secured to him by the Fourth Amendment of the Constitution of the United States and laws enacted thereunder.

44. The arbitrary intrusion by Defendants, into the security and privacy of Plaintiff's person was in violation of Plaintiff's constitutional rights and not authorized by law. Defendants violated Plaintiff's rights in the following manner: the detention, seizure and/or arrest of Plaintiff was not supported by probable cause. These acts were in violation of Plaintiff's Fourth

Amendment rights. Therefore, Defendants, in their individual capacity, are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT II
### PLAINTIFF AGAINST ALL INDIVIDUAL KNOWN AND UNKOWN DEFENDANTS AND OTHERS, FOR A CONSPIRACY TO VIOLATE HIS FOURTH AND FOURTEENTH AMENDMENT RIGHTS THROUGH UNLAWFUL DETENTION

45. Plaintiff hereby incorporates and realleges paragraphs one (1) through forty-one (41) hereat as though fully set forth at this place.

46. Upon information and belief, the individual Defendant Officers and each of them, as well as the other unknown and unnamed officers of the Chicago Police Department, formed an agreement to deprive Plaintiff of his search and seizure, due process, and liberty rights by agreeing to, and in furtherance of that agreement, fraudulently obtaining a search warrant, illegally stopping and detaining Plaintiff, planting contraband at Plaintiff's residence, and falsifying police reports as indicated above.

47. By reason of the conduct of Defendants and each of them, Plaintiff was deprived of rights, privileges and immunities, secured to him by the Fourth Amendment to the Constitution of the United States and laws enacted thereunder.

48. Subsequent to his arrest, Plaintiff was continually detained without probable cause in violation of his Fourth Amendment Rights.

49. Further in violation of the Plaintiff's Fourth and Fourteenth Amendment rights, Defendants manufactured, planted, and fabricated evidence and falsified police reports.

50. The foregoing was unnecessary and unreasonable and was therefore in violation of Plaintiff's Fourth and Fourteenth due process rights. Therefore, the Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT III
## PLAINTIFF AGAINST ALL INDIVIDUAL KNOWN AND UNKNOWN DEFENDANTS AND OTHERS, FOR VIOLATION OF HIS FOURTH AMENDMENT RIGHTS THROUGH UNLAWFUL DETENTION

51. Plaintiff hereby incorporates and realleges paragraphs one (1) through forty-one (41) hereat as though fully set forth at this place.

52. The Defendants and each of them, known and unknown, subjected Plaintiff to criminal prosecution, a pretrial detention, and/or deprivation of his liberty without probable cause.

53. Defendants did not have probable cause to believe Plaintiff had committed an offense or cause him to be subjected to any pretrial restriction of his liberty.

54. Defendants knew that Plaintiff's arrest, detention, and criminal prosecution were based solely upon Defendants' false allegation that they found a firearm at Plaintiff's residence and that Plaintiff had possessed the firearm.

55. All criminal charges initiated by Defendants against Plaintiff were terminated in his favor in a manner indicative of innocence on July 2, 2019.

56. By reason of the conduct of Defendants and each of them, Plaintiff was deprived of rights, privileges and immunities, secured to him by the Fourth Amendment to the Constitution of the United States and laws enacted thereunder.

57. The arbitrary intrusion by Defendants, into the security and privacy of Plaintiff's person was in violation of Plaintiff's constitutional rights and not authorized by law. Defendants violated Plaintiff's rights in the following manner: causing the Plaintiff to be subjected to pretrial detention that restrained his liberty without probable cause for the detention and in violation of Plaintiff's Fourth Amendment rights. Therefore, Defendants in their individual capacity, are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT IV
## PLAINTIFF AGAINST THE CITY OF CHICAGO FOR *MONELL* LIABILITY

58. Plaintiff incorporates and realleges paragraphs one (1) through fifty-seven (57) hereat as though fully set forth at this place.

59. The misconduct of the Chicago Police Department Sergeant and Police Officers described above was undertaken pursuant to the practice of the Chicago Police Department in that as a matter of practice, the Chicago Police Department encourages the very type of misconduct at issue here by failing to adequately train, supervise, control and/or discipline its officers, such that its failure to do so manifests deliberate indifference.

60. The misconduct of the Defendant Officers was facilitated by the Chicago Police Department's deficient policies and procedures relating to obtaining and executing search warrants. This misconduct included failing to make reasonable efforts to corroborate or properly investigate information provided by informants, fabricating or concealing material information in order to obtain warrants, and failing to record the execution of search warrants with body worn cameras in order to hold officers accountable and deter misconduct during the execution of search warrants.

61. As a matter of practice, the Chicago Police Department facilitates the type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff. Specifically, Chicago Police officers accused of civil rights violations can be confident that neither the Independent Review Authority, COPA, nor Internal Affairs will reasonably investigate those accusations, and will refuse to recommend discipline even where the Officer has violated rights of citizens.

62. The Chicago Police Department has a widespread "code of silence" wherein police officers will not report misconduct committed by fellow officers.

63. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. For example, on December 8, 2015, Rahm Emmanuel, Mayor of the City of Chicago, stated publicly that Chicago Police officers maintain this "code of silence."

64. On December 8, 2015 Mayor Emanuel was asked the following question and gave the following answer during a television interview on WTTW in Chicago, Illinois:

Question: I want to ask you point blank, is there a code of silence that exists among Chicago police officers?

Answer: The short answer is, yes.

65. Mayor Lori Lightfoot prior to her 2019 election was Chairperson of the Chicago Police Accountability Taskforce. In 2016, the Chicago Police Accountability Taskforce acknowledged the "code of silence" within the Chicago Police Department.

66. Several of the individual Defendants in this case have had dozens of citizens' complaints filed against them without the City of Chicago implementing any discipline against them.

67. For example, Defendant Chudzik has at least ten (10) misconduct complaints filed against him, half of which include allegations that he engaged in an illegal search and/or false arrest. None of Chudzik's misconduct complaints relating to illegal search and false arrest have led to any discipline by the City of Chicago.

68. Defendant Brandon has at least forty (40) misconduct complaints against him. Thirteen (13) of those misconduct complaints include allegations that Brandon engaged in an illegal search and four (4) misconduct complaints include allegations that he engaged in a false arrest. Brandon has not been disciplined by the City of Chicago for any of the forty (40) misconduct complaints against him.

69. Defendant Gallas has at least twenty-four (24) misconduct complaints against

10

him. Eleven (11) of those misconduct complaints include allegations that Gallas engaged in an illegal search and five (5) misconduct complaints include allegations that he engaged in a false arrest. Gallas has not been disciplined by the City of Chicago for any of twenty-four (24) misconduct complaints against him.

70. Defendant Zablocki has at least twenty-eight (28) misconduct complaints against him. Seven (7) of those misconduct complaints include allegations that Zablocki engaged in an illegal search and two (2) misconduct complaints include allegations that he engaged in a false arrest. Zablocki has not been disciplined by the City of Chicago for any of the twenty-eight (28) misconduct complaints against him.

71. Defendant Mitchell has at least sixty-four (64) misconduct complaints against him. Eighteen (18) of those misconduct complaints include allegations that Mitchell engaged in an illegal search and three (3) misconduct complaints include allegations of false arrest. None of Mitchell's misconduct complaints relating to illegal search and false arrest have led to any discipline by the City of Chicago.

72. Defendant Dolan has at least twenty-nine (29) misconduct complaints against him. Seven (7) of those misconduct complaints include allegations that Dolan engaged in an illegal search and three (3) misconduct complaints include allegations of false arrest. None of Dolan's misconduct complaints relating to illegal search and false arrest have led to any discipline by the City of Chicago.

73. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged herein on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases.

74. The City of Chicago has failed to act to remedy the patterns of abuse described in

the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

75. In January 2017, The U.S. Department of Justice issued a report based upon an extensive investigation into the practices of the Chicago Police Department. This report included the following findings:

   a. The City of Chicago's accountability systems for Chicago Police Officers contribute a pattern or practice of unconstitutional conduct;

   b. The City of Chicago's Policies and Practices impede the investigation of Police Officer misconduct;

   c. Investigations into police misconduct are neither fair nor complete;

   d. The City of Chicago and the Chicago Police Department do not take sufficient steps to prevent officers from deliberately concealing misconduct; and

   e. The City of Chicago's discipline system for Chicago Police Officers lacks integrity and does not effectively deter misconduct.

76. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same kind of misconduct multiple times IAD, IPRA and/or COPA will not consider those allegations if they are deemed unsustained.

77. Even in instances when the City of Chicago has paid thousands of dollars to settle claims and/or satisfy judgments that resulted from the misconduct of its officers it refuses to investigate and/or reinvestigate misconduct by its police officers.

78. For example, Defendant Brandon has had at least 11 federal lawsuits filed against him

for police misconduct. At least eight (8) of the lawsuits against Brandon have resulted in City of Chicago paying a total of at least $270,000 in settlements or judgments.

79. In 2018, the City of Chicago paid more than $113 million to settle Chicago Police misconduct cases putting the City of Chicago on notice regarding failed policies, practices and customs.

80. Illustrative but non-exhaustive, highly publicized accounts of the Chicago Police Department utilizing false information to obtain search warrants, fabricating evidence and falsifying police reports, and/or executing search warrants illegally, have further put the City of Chicago on notice regarding failed policies, practices and customs. This includes the wrongful convictions procured by Chicago Police Officer Ronald Watts by framing innocent men and the illegal search warrants procured by Chicago Police Officer David Salgado and Xavier Elizondo who fabricated evidence and bribed confidential informants to lie to judges.

81. Plaintiffs allege that these customs, policies and practices, described above, were the moving force behind the violations of the Plaintiffs' rights. Based upon the principles set forth in *Monell v. New York City Department of Social Services*, the City of Chicago is liable for all the harm done to Plaintiff as set forth above.

WHEREFORE, the Plaintiff, by and through his attorneys, ED FOX & ASSOCIATES, requests judgment as follows against the Defendants, and each of them:

1. That individual Defendants and each of them and other unnamed and unknown Defendants be required to pay Plaintiff's general damages, including emotional distress, in a sum to be ascertained;

2. That these same Defendants be required to pay Plaintiff's special damages;

3. That these same Defendants other than the City of Chicago be required to pay Plaintiff's attorneys fees pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any other applicable provision;

4. That the individual Defendants and each of them and other unnamed and unknown Defendants other than the City of Chicago be required to pay punitive and exemplary damages in a sum to be ascertained;

5. That the Defendants be required to pay Plaintiff's costs of the suit herein incurred; and

6. That Plaintiff have such other and further relief as this Court may deem just and proper.

> BY: s/ Jaclyn N. Diaz
> ED FOX & ASSOCIATES
> Attorneys for Plaintiff
> 300 West Adams
> Suite 330
> Chicago, Illinois 60606
> (312) 345-8877
> jdiaz@efoxlaw.com

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

> BY: s/Jaclyn N. Diaz
> ED FOX & ASSOCIATES
> Attorneys for Plaintiff
> 300 West Adams
> Suite 330
> Chicago, Illinois 60606
> (312) 345-8877
> jdiaz@efoxlaw.com